[No. G039037. Fourth Dist., Div. Three. June 12, 2008.]

THE CADLE COMPANY II, INC., Plaintiff and Appellant, v.
WAYNE FISCUS, Defendant and Respondent.

COUNSEL

Brewer & Brewer and Templeton Briggs for Plaintiff and Appellant.

Theodore C. Beall for Defendant and Respondent.

OPINION

**O'LEARY, J.**—The Cadle Company II, Inc. (Cadle), appeals from the trial court's order granting Wayne Fiscus's motion to quash service of summons in its action to revive a 1992 money judgment against Fiscus. The trial court concluded the independent action to enforce the judgment required Fiscus

have current contacts with the State of California and the original judgment did not suffice for minimum contacts. We disagree and reverse the order.

## FACTS

In 1991, Fiscus defaulted on a promissory note, executed in California in 1987, held by Union Bank. Union Bank assigned the debt to The Best Service Company (Best), and Best filed suit. Fiscus, who was then a resident of Arizona, answered the complaint. On February 27, 1992, after Best apparently successfully moved for summary judgment, a judgment was entered in San Mateo County against Fiscus in Best's favor for $14,800.45, representing the promissory note's unpaid balance of $9,201.41, plus accrued interest, attorney fees, and costs (hereafter the 1992 judgment). On June 21, 2001, Best assigned the unsatisfied judgment to Cadle.

On February 25, 2002, Cadle filed an application with the Clerk of the San Mateo County Superior Court pursuant to Code of Civil Procedure section 683.120[1] for renewal of the 1992 judgment, and the clerk entered the renewal in a total amount of $29,403.45 (original judgment plus accrued interest). Fiscus was served with notice of the renewed judgment and did not challenge the renewal.

On May 9, 2006, Cadle filed the instant action, an independent complaint to enforce the 1992 judgment. Fiscus filed a motion to quash service of summons on the grounds the court lacked personal jurisdiction. Fiscus declared he has been a resident of Arizona since 1987, and does not own property, conduct business, or maintain a residence in California.

In its opposition, Cadle did not dispute any of the facts asserted by Fiscus concerning his lack of current contact with the State of California. Rather, it asserted personal jurisdiction existed over Fiscus by virtue of the 1992 judgment. Cadle explained the State of Arizona has a five-year statute of limitations for enforcement of a sister state judgment. Accordingly, even though the judgment was still enforceable in California, it could not be domesticated and enforced in Arizona. Cadle's only recourse was to file an independent action based on the still enforceable judgment in California and obtain a new judgment that could then be domesticated and executed upon in Arizona.[2]

---

[1] All further statutory references are to the Code of Civil Procedure.

[2] In *Watkins v. Conway* (1966) 385 U.S. 188 [17 L.Ed.2d 286, 87 S.Ct. 357], the United States Supreme Court endorsed this procedure. It was faced with an argument that Georgia's shorter statute of limitations for enforcing a judgment denied full faith and credit to a judgment of a sister state that had a longer period for enforcing the judgment. The court concluded the Georgia statute did not preclude the judgment creditor from returning to the state that rendered

The trial court granted the motion to quash. It concluded that although the California court might have continuing jurisdiction to *renew* a judgment by the statutory procedure (i.e., via § 683.120), when an independent action to enforce a judgment is filed, there must be new and current basis for asserting personal jurisdiction over the defendant.

## DISCUSSION

Cadle contends the trial court erred by granting Fiscus's motion to quash service of summons. It argues the California court may exercise personal jurisdiction over Fiscus as concerns the enforcement of the 1992 judgment in a revival action. We agree.

### *General Jurisdiction Principles*

■ "Once a defendant moves to quash out-of-state service of process for lack of jurisdiction, the plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. [Citation.] When the evidence conflicts, we review the trial court [ruling] for abuse of discretion. [Citation.] When the parties do not dispute the facts, we review the issue of jurisdiction de novo. [Citation.]" (*As You Sow v. Crawford Laboratories, Inc.* (1996) 50 Cal.App.4th 1859, 1866 [58 Cal.Rptr.2d 654] (*As You Sow*).) Because there are no significant factual disputes, we review de novo the issue of whether personal jurisdiction exists.

■ "Under . . . section 410.10, a California court 'may exercise jurisdiction on any basis not inconsistent' with the federal or state Constitutions. A state may constitutionally exercise personal jurisdiction over a nonresident defendant when the defendant 'purposefully established "minimum contacts" in the forum State.' [Citation.] Additionally, the defendant's contacts with the forum must make it reasonable for the person to 'anticipate being haled into court there' [citation] so it ' "does not offend 'traditional notions of fair play and substantial justice.' " ' [Citation.]

■ "A state has general jurisdiction over a nonresident defendant for all causes of action if the defendant's activities within the state are ' "extensive or wide-ranging" ' or ' "substantial . . . continuous and systematic." ' [Citation.] The issue of jurisdiction depends on the particular facts of each case and cannot be decided by applying a mechanical test or a precise formula. [Citation.]

---

the judgment, and reviving the judgment by filing a new action, which in turn could be brought back and domesticated in Georgia. Thus, the Georgia statute did not deny full faith and credit to the sister state judgment.

"Less extensive activity may not support general jurisdiction, but may justify limited jurisdiction for the 'purposes of a particular cause of action depending upon the nature and quality of the acts, the degree of relation to the asserted cause of action, and the balance between the convenience of the parties and the interest of the state in asserting jurisdiction. [Citations.]' [Citation.] 'In cases where jurisdiction is based on the defendant's occasional activities the United States Supreme Court has said that ". . . it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." ' [Citation.]" (*As You Sow, supra*, 50 Cal.App.4th at pp. 1866–1867; see also *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700 [46 Cal.Rptr.2d 888].)

Cadle does not suggest the California court has general jurisdiction over Fiscus. It is undisputed Fiscus has been a resident of Arizona since 1987, and does not own property, conduct business, or maintain a residence in the State of California. Rather, Cadle contends the California court has limited (i.e., specific) jurisdiction over this particular cause of action brought to enforce the 1992 judgment. We agree. It is undisputed the California court had personal jurisdiction over Fiscus when the original judgment was entered—he made a general appearance and answered the complaint.

*California Authorities*

In the trial court and on appeal, Fiscus contends that although the California court has continuing personal jurisdiction to renew the 1992 judgment pursuant to the statutory, and purely ministerial, renewal procedure set forth in section 683.120 (a position recently affirmed in *Goldman v. Simpson* (2008) 160 Cal.App.4th 255 [72 Cal.Rptr.3d 729]; see § 410.50, subd. (b) [court's jurisdiction "continues throughout subsequent proceedings in the action"]), that jurisdiction does not extend to an independent action on the original judgment, which would result in an entirely new judgment against him. There must, Fiscus contends and the trial court agreed, be minimum contacts at the time the new action was filed. We conclude the original litigation and the original judgment support minimum contacts and support exercising personal jurisdiction over Fiscus.

In 1982, the Legislature enacted the Enforcement of Judgments Law (EJL). (§ 680.010 et seq.) Prior to enactment of the EJL, the means for renewal of a judgment in California was by filing an independent action on the judgment within the 10-year statute of limitations. (*Pratali v. Gates* (1992) 4 Cal.App.4th 632, 637 [5 Cal.Rptr.2d 733] (*Pratali*).)

"In the [EJL], the Legislature adopted an alternative summary procedure for renewal [of judgments]. ([*Pratali, supra*, 4 Cal.App.4th at

pp. 637–638]; § 683.050; see Tentative Recommendation Proposing the Enforcement of Judgments Law (Oct. 1980) 15 Cal. Law Revision Com. Rep. (1980) p. 2009.) Under this procedure, a money judgment is enforceable for 10 years from the date it is entered. (§ 683.020.) To obtain a renewal of the judgment, the judgment creditor must file an application for renewal with the clerk of the court that entered the judgment before the expiration of the 10-year period of enforceability. (§ 683.130, subd. (a); see § 683.140 [setting forth information to be included in application].) 'Upon the filing of the application, the court clerk shall enter the renewal of the judgment in the court records.' (§ 683.150, subd. (a).)" (*Goldman v. Simpson, supra,* 160 Cal.App.4th at p. 260.)

But nothing in the EJL limits a judgment creditor's right to pursue an independent action on the judgment. (§ 683.050.) An independent action " 'based on a judgment is an action based on contract. The [original] judgment becomes a debt which the judgment debtor is obligated to pay and the law implies a contract on his part to pay it. [Citation.]' [Citation.] Thus, when successful, an action on a judgment results in the entry of a new judgment." (*Goldman v. Simpson, supra,* 160 Cal.App.4th at p. 262, fn. 3.)

■ *Goldman v. Simpson, supra,* 160 Cal.App.4th 255, held the court has continuing personal jurisdiction over the judgment debtor to renew the judgment via the statutory procedure. "[T]he renewal procedure is properly treated as a 'subsequent proceeding' under section 410.50." (*Id.* at p. 264.) But neither *Goldman,* nor any other published California decision we have found, addresses whether the existence of personal jurisdiction over the judgment debtor in the original action and the existence of the original judgment satisfy the due process minimum contacts requirement and permit the court to exercise personal jurisdiction over the judgment debtor in an *independent action* to revive the judgment. There are, however, several cases from other jurisdictions considering this very issue and all support the conclusion the original judgment provides sufficient minimum contacts between the judgment debtor and the forum state to justify the exertion of personal jurisdiction over the judgment debtor in a revival action.

*Cases from Other Jurisdictions*

In *Huff v. Pharr* (11th Cir. 1984) 748 F.2d 1553 (*Huff*), the plaintiff obtained a California judgment against the defendant who resided in Florida. The defendant had appeared in the original action and had unsuccessfully pursued a cross-complaint. When the original judgment could not be domesticated in Florida because a five-year statute of limitations had run, the plaintiff returned to California where he obtained a default judgment against the defendant in a newly filed action on the original judgment. The plaintiff went back to Florida to domesticate the new judgment in a diversity suit brought in federal court.

The defendant argued the new California judgment was unenforceable against him because the California court lacked personal jurisdiction over him as he had no minimum contacts with California at the time the revival action was filed. The 11th Circuit disagreed. The court assumed there was a "due process requirement of minimum contacts" between the defendant and California in the independent action to enforce the original judgment. (*Huff, supra*, 748 F.2d at pp. 1554–1555.) "The narrow issue of this appeal is whether the defendant's participation in the original litigation and his connection with the State of California prior to that litigation satisfy the minimum contacts requirement." (*Id.* at p. 1555.) The defendant asserted the passage of time between the original California litigation and the revival action, during which he had no contacts with the State of California, was such "that it would 'offend traditional notions of fair play and substantial justice' to hold him subject to the state court's jurisdiction a second time. [Citation.]" (*Ibid.*) The court disagreed, concluding the defendant had the requisite minimum contacts with California for its courts to exercise personal jurisdiction over him in the revival action. The California court had personal jurisdiction over the defendant in the original action, the defendant litigated a cross-complaint in the original action, and the original action involved a claim connected with his forum-related activities (i.e., obtaining a loan). "Under these circumstances, we do not consider it unfair to require . . . defendant, when properly served, to submit again to the jurisdiction of the California courts in a suit based upon a judgment previously entered in an action involving the same claim." (*Ibid.*)

Fiscus argues *Huff* is factually inapposite because (1) it involved an action to domesticate a renewal judgment obtained by default (whereas he filed a motion to quash in this renewal action); and (2) the defendant had pursued a cross-complaint in the original action, thus, availing himself of California as a place to litigate his own claims. Both are distinctions without meaning. The salient point of *Huff* is that the court viewed defendant's jurisdictional contacts with California at the time of entry of the original judgment to be the relevant contacts, not the defendant's contacts at the time the independent renewal action was filed. (See 1 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 3:205.1, p. 3-55 ["The relevant period during which 'minimum contacts' must have existed is when the cause of action arose rather than when the complaint was filed or served." (Italics omitted.)].)

Similarly, in *McGraw v. Parsons* (1985) 142 Mich.App. 22 [369 N.W.2d 251] (*McGraw*), the Michigan Court of Appeals considered whether Michigan courts had jurisdiction in an action to revive an almost 10-year-old Michigan judgment against a Florida resident. The *McGraw* court concluded jurisdiction existed for two reasons. First, "any action on the judgment,

whether pursuant to a new complaint or a writ of *scire facias*,[3] [is] a continuation of the original action such that jurisdiction is proper in the court which rendered the original judgment. [Citations.]" (*Id.* at p. 252.) Second, personal jurisdiction existed under Michigan's long-arm statute, which, like California's, "bestow[s] upon the courts the broadest grant of jurisdiction consistent with due process. [Citation.]" (*Id.* at p. 253.) The court concluded there were minimum contacts because of the defendant's contacts that led to the original judgment, including his prior residence and business activities in the state, and his obtaining and failing to repay the Michigan loan. "The instant cause of action clearly arose from defendant's activities here, including the initial loan, the consent judgment and defendant's failure to satisfy his obligations under the consent judgment. Defendant could reasonably have expected to be haled before a Michigan court in the event he failed to satisfy the judgment or the underlying obligation. We conclude that the minimum contacts test is met in the instant case and that the trial court had limited personal jurisdiction over defendant." (*Ibid.*)

Other jurisdictions have similarly found sufficient minimum contacts to exercise personal jurisdiction in a revival action by virtue of the original judgment. In *Kronstadt v. Kronstadt* (1990) 238 N.J.Super. 614 [570 A.2d 485, 487], a *scire facias* writ proceeding to revive a dormant judgment, the court found minimum contacts supporting jurisdiction based on the defendant's participation in the original litigation. In *Kaylor v. Turner* (1993) 210 Ga.App. 2 [435 S.E.2d 233, 235], the court held that under the state's broad long-arm statute, "when a defendant had the requisite minimum contacts with the forum state for that state to exercise personal jurisdiction over the defendant during the original litigation, those same contacts are sufficient to provide personal jurisdiction to the trial court for any revival action concerning the judgment entered in the course of the original litigation." (See 50 C.J.S. (1997) Judgments, § 648, p. 192, quoting the text.) And still other jurisdictions, without engaging in a minimum contacts analysis, have concluded jurisdiction exists in the revival action because it is simply a continuation of the original proceeding. (See *Von Hake v. Thomas* (Utah Ct.App. 1993) 858 P.2d 193; *McCarthy v. Johnson* (D.Utah 1997) 35 F.Supp.2d 846.)

 We agree with the conclusions of the decisions of other jurisdictions. There is nothing unreasonable about subjecting Fiscus to the jurisdiction of California courts in an independent action to renew the 1992 judgment. Fiscus entered into a contract in California (the promissory note), that was to be performed in California (i.e., payment of the debt), which he breached when he failed to repay the debt. An action on the note was filed in California

---

[3] At common law, a dormant judgment could be revived via a writ of *scire facias* (see 16 Cal. Law Revision Com. Rep. (1982) pp. 1030–1031, fn. 7), a writ that was abolished in California. (Former § 801.)

and Fiscus submitted himself to the jurisdiction of the California court when he appeared in the action. A money judgment was entered against Fiscus in California, and he has failed to pay his obligations. We cannot agree the passage of time between the original California litigation and the revival action, during which Fiscus has had no additional contacts with the State of California, defeats personal jurisdiction as concerns the enforcement of the 1992 judgment. Such a conclusion could encourage judgment debtors to evade legal obligations imposed by a judgment of this state's courts by simply packing up their assets and leaving the jurisdiction. Under the circumstances, it is not unfair to require Fiscus to submit again to the jurisdiction of the California courts in a suit based upon the judgment previously entered on the same claim.

## DISPOSITION

The judgment is reversed and remanded for respondent's reinstatement as a party defendant. Appellant is awarded its costs on appeal.

Sills, P. J., and Ikola, J., concurred.